## OSBORNE, RECEIVER OF THE CHATTANOOGA SOUTHERN RAILROAD COMPANY, *v.* GRAY.

### ERROR TO THE SUPREME COURT OF TENNESSEE.

No. 373.   Argued April 3, 1916.—Decided April 17, 1916.

In an action by representatives of an employee for his death, from negligence of an interstate carrier by rail, defendants are entitled to insist upon the applicable Federal Law as the exclusive measure of liability, whether plaintiff presents his case under the Federal or state law.

In the absence of a showing bringing the injury within the Federal act, the question whether the declaration permits a recovery at common law is a state, and not a Federal, question.

Where there is no evidence showing that the deceased was engaged in interstate commerce when killed, the court cannot supply the deficiency by taking judicial notice of that fact, basing its knowledge on facts such as that the location of the accident was near the border of the State and the direction from which the cars came.

An interstate carrier, defendant in an action for death of an employee, is bound to know the actual movement of its trains and whether they were interstate, and if it fails to inform the court on this point, it cannot complain that it is deprived of a Federal right because the court does not take judicial notice of facts bearing thereon.

THE facts, which involve the validity of a verdict under the Employers' Liability Act, are stated in the opinion.

*Mr. William L. Frierson*, with whom *Mr. Lewis M. Coleman* was on the brief, for plaintiff in error:

Where it appears either in the declaration or in the proof that the accident occurred in interstate commerce, the Act of Congress controls and, in case of death, a widow cannot recover in her own name. *Wabash R. R.* v. *Hayes*, 234 U. S. 86; *Toledo &c. R. R.* v. *Slavin*, 236 U. S. 454.

The amendment of the amended declaration amended both counts and, therefore, there was no count which did not allege interstate commerce or under which a widow could recover in her own name.

The view expressed by the state court that only the second count was amended is not conclusive on this court. *Light Co.* v. *Newport,* 151 U. S. 537; *Covington Turnpike Co.* v. *Sandford,* 164 U. S. 595; *Mitchell* v. *Clark,* 110 U. S. 663; *Boyd* v. *Nebraska,* 143 U. S. 135; *Vandalia R. R.* v. *Indiana,* 207 U. S. 367.

From the facts which were established by evidence introduced before the jury, and from general knowledge the trial court was bound to know judicially and this court will know that the Chattanooga Southern Railroad extends from Chattanooga to the Georgia state line, and then through the State of Georgia and to Gadsden in Alabama; that Chattanooga is only about four or five miles from the Georgia state line and its suburb of Alton Park, immediately south of it, is almost on the state line. *Peyroux* v. *Howard,* 7 Pet. 324; *United States* v. *La Vengeance,* 3 Dall. 297; *United States* v. *Lawton,* 5 How. 26; *Watts* v. *Lindsey,* 7 Wheat. 162; *McNitt* v. *Turner,* 16 Wall. 352; *Wheeling Bridge Case,* 13 How. 561; *United States* v. *Thornton,* 160 U. S. 458–9; *Waters-Pierce Oil Co.* v. *DeSelms,* 212 U. S. 159; *Schollenberger* v. *Pennsylvania,* 171 U. S. 9–10; *New Mexico* v. *Denver &c. R. R.,* 203 U. S. 38; *Nicol* v. *Ames,* 173 U. S. 516–17; *Gibson* v. *Stevens,* 8 How. 399; *Brown* v. *Spillman,* 155 U. S. 665; *United States* v. *Trans-Missouri R. R.,* 166 U. S. 290; *Louisville Trust Co.* v. *Louisville &c. R. R.,* 174 U. S. 674; *Black Diamond Co.* v. *Excelsior Co.,* 156 U. S. 611; *Sligh* v. *Kirkwood,* 237 U. S. 52; Greenleaf on Evidence (15th ed.), § 6; *Thorson* v. *Peterson,* 9 Fed. Rep. 517; *Gilbert* v. *Moline,* 19 Iowa, 319; *Coover* v. *Davenport,* 1 Heisk. (Tenn.) 368; *St. Louis* v. *Magness,* 68 Arkansas, 289; *Perry* v. *State,* 113 Georgia, 938; *Harvey* v. *Oklahoma,* 11 Oklahoma, 156; *Harvey* v. *Wayne,* 72

Maine, 430; *Bailey* v. *Birkhofer*, 123 Iowa, 59; *Bond* v. *Perkins*, 4 Heisk. (Tenn.) 364; *Bruson* v. *Clark*, 151 Illinois, 495; *Pearce* v. *Langfit*, 101 Pa. St. 507; *Blumenthal* v. *Pacific Meat Co.*, 12 Washington, 332; *Seigbert* v. *Stiles*, 39 Wisconsin, 533; Chamberlayne on Mod. Law of Evidence, 741; *Hobbs* v. *Memphis &c.*, 9 Heisk. (Tenn.) 874; *State* v. *Railroad*, 212 Missouri, 677; *Gulf &c. R. R.* v. *State*, 72 Texas, 404; 16 Cyc. 861; *Miller* v. *Texas &c. R. R.*, 83 Texas, 518; *Smith* v. *Flournoy*, 47 Alabama, 345.

The opinion of the Court of Civil Appeals shows that the allegation which that court found to be supported by the evidence and upon which it based its judgment, is in the second and not in the first count.

*Mr. B. E. Tatum*, with whom *Mr. Felix D. Lynch, Mr. George W. Chamlee, Mr. Joe V. Williams* and *Mr. P. H. Thach* were on the brief, for defendant in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

This suit was brought, in the year 1908, by Jennie B. Gray to recover damages for the death of her husband who was employed in the operation of the railroad of which the plaintiff in error and another were receivers. The original declaration sought recovery for negligence, at common law, and did not allege that the deceased was injured while engaged in interstate commerce. The plaintiff was permitted to file an additional count and this was subsequently amended so as to allege the interstate character of the employment of the deceased at the time of his injury. The action was first tried in November, 1912; the jury rendered a verdict in favor of the plaintiff for $10,000 and judgment was entered accordingly. Thereupon, the trial judge granted a new trial upon the ground that he had erred in his instructions

to the jury with respect to the burden of proof. At the second trial, in 1913, a verdict was directed for the defendants (the plaintiffs in error) and judgment in their favor was entered. The Court of Civil Appeals reversed this judgment and reinstated the judgment entered upon the verdict at the first trial. The Court of Civil Appeals did not consider the record of the second trial but was of the opinion that the verdict first rendered in favor of the plaintiff should not have been set aside. This decision was affirmed by the Supreme Court of the State, without opinion.

The plaintiff in error presents for our consideration these assignments of error: (1) That the court erred in not holding that both counts of the declaration stated a case controlled by the Federal Employers' Liability Act and that, therefore, the widow could not recover in a suit begun in her own name; and (2) That the court erred in not holding that the evidence on the first trial made a case within the Federal Act.

In support of the first assignment, it is insisted that the amendment inserting the allegation that the injury was sustained while the decedent was engaged in interstate commerce amended both counts of the declaration. The state court treated it as an amendment of the second count and thus the declaration on which the case was tried was deemed to contain two counts, "one under the common law of Tennessee and the other charging negligence under the Employers' Liability Act." From a Federal standpoint, the question is not important, for if it had been shown that the injury had been received in interstate commerce, the defendants would have been entitled to insist upon the applicable Federal law as the exclusive measure of their liability, and they would not have lost this right merely because the plaintiff had seen fit to present the claim 'in an alternative way' by means of separate counts. *Wabash R. R.* v. *Hayes*, 234

U. S. 86, 90. And in the absence of a showing bringing the injury within the Federal Act, the question whether the declaration permitted a recovery at common law was a state question.

It was distinctly stated by the Court of Civil Appeals that if the proof showed "that the deceased was engaged in interstate commerce when he was injured," the court would "be compelled to hold that the trial judge was not in error in setting aside the verdict." But it was found that there was no basis in the evidence for such a conclusion and the second assignment of error challenges this ruling. The Court of Civil Appeals thus stated the facts:

"The proof indicates that the deceased came into Alton Park on a passenger train, and, as a part of this train there were three cars loaded with peaches. These cars were taken out of the passenger train at Alton Park, when the train went on to Chattanooga depot. After these fruit cars were taken out of the passenger train, the deceased was directed by one of his superiors, to have them re-iced and then taken to Cravens and delivered to the N., C. & St. L. Railroad Company. The proof does not show that the passenger train on which the deceased came into Alton Park, and a part of which the fruit cars were, came from another State, and in fact fails to show where it came from. The proof likewise fails to show how far through, or into what part of Tennessee the railroad of defendant company is located, and to what point it operates trains. . . . The fruit cars which he was ordered to take and deliver to the Nashville road, so far as his record discloses, were taken out of a passenger train in Alton Park. The proof does not indicate where they came from, whether from another State, or whether they were picked up in Tennessee. . . . We do not know where the passenger train came from, nor where these fruit cars came from; all we do know is, they were

cut out of the passenger train at Alton Park, and the deceased was ordered to take them down into Chattanooga and deliver them to the N., C. & St. L. R. R. Co. That being true, the deceased and these cars were engaged in intra-state commerce when he received his fatal injury, and not in interstate commerce."

The evidence has not been printed, but by stipulation between the parties it is agreed that the testimony also showed that the passenger train in question had left Chattanooga at seven o'clock in the morning of the day of the accident and that it had come into Alton Park from the south, on its return trip, late in the afternoon. But this still leaves undisclosed the origin and destination of the cars in the movement of which the decedent was employed.

It is apparent that there was no evidence requiring the conclusion that the deceased was engaged in interstate commerce at the time of his injury, and we are asked to supply the deficiency by taking judicial notice that the cars came from without the State. This contention we are unable to sustain. The make-up of trains and the movement of cars are not matters which we may assume to know without evidence. The state court, with its intimate knowledge of the local situation, thought that such an assumption on its part would be wholly unwarranted and we cannot say that it erred in this view. The fact that Chattanooga and its suburb, Alton Park, were near the state line did not establish that the cars had crossed it. The defendants knew the actual movement of the cars, and failing to inform the court upon this point cannot complain that they have been deprived of a Federal right.

*Judgment affirmed.*