### Brown v. Lehigh Valley Railroad Company, Appellant.

Argued March 2, 1936.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*John C. Phillips*, with him *Evan C. Jones* and *V. P. Sennett*, for appellant.

*Frank J. Flannery*, for appellee.

OPINION BY PARKER, J., April 16, 1936:
In this workmen's compensation case the claimant,

Isabella Brown, has a judgment on account of the death of her husband, Arthur Brown, who died from injuries received in an accident while in the course of his employment with the Lehigh Valley Railroad Company, the defendant. The employer has appealed to this court alleging that Brown was engaged in interstate commerce at the time he was injured. We are of the opinion that the referee, board and common pleas court were incorrect in holding that he was not engaged at the time of the accident in interstate commerce.

The facts bearing on this feature of the case are not in dispute. The employee was at the time engaged as a watchman at an intersection of the railroad and a public highway in Plainsville, Luzerne County, Pennsylvania, for the defendant, and that company paid him for his services. The company was engaged as a common carrier in both interstate and intrastate commerce and a large number of trains moving from within and without this state and carrying interstate shipments passed over the crossing daily. The referee further found as follows: "10. That the Lehigh Valley Railroad Company maintains a watchman's shanty at the Plainsville crossing for the use and comfort of the crossing watchman and as a place in which to keep the various signal devices used in connection with the watchman's duty. There were no gates at this crossing. The duties of the watchman were to be on the alert to safeguard the property of his employer and the property and lives of the public. The shanty was heated by a coal stove and had windows on the several sides from which the attendant could get a clear view of the tracks in both directions and of the crossing itself with its approaches. 11. That during the forenoon of December 6th, 1932, Arthur Brown, while on duty and when in the act of shaking the grate of the stove in his shanty, bumped his right elbow, causing an abrasion. 12. That the injury on Arthur Brown's elbow became

infected producing cellulitis of his right arm and caus-
ing his death from Septicemia, January 5th, 1933."

If the deceased was employed in interstate commerce
when the accident occurred, the consequent rights and
liabilities arose under the federal Employers' Liability
Act, and the state statutes do not apply: N. Y. Cent.
R. Co. v. Porter, 249 U. S. 168, 169, 39 S. Ct. 188. The
decisions of the Supreme Court of the United States are
controlling (Mayers v. Union R. Co., 256 Pa. 474, 100
A. 967) and the case of Phila. & R. Ry. Co. v. Di Do-
nato, 256 U. S. 327, 41 S. Ct. 516, is decisive of the ques-
tion involved. In that case it was held that a flagman
employed by a railway company which was engaged in
both intrastate and interstate commerce was employed
in interstate commerce while engaged in flagging a
train regardless of whether that particular train was
engaged in interstate or intrastate commerce, since
his duties were essential to the safety of all trains, and
that therefore his widow could not recover compensa-
tion for his death under the Pennsylvania Workmen's
Compensation Law.

The decedent was just as clearly engaged in inter-
state transportation or in work "so closely related to
it as to be practically a part of it" (Pedersen v. D. L.
& W. R. R. Co., 229 U. S. 146, 151, 33 S. Ct. 648)
when he was watching for trains through the windows
in a shanty provided for that purpose by the defendant,
as when he was on the crossing with a flag in his hand.
In any event the mere incidental shaking of the grate
in the stove in the shanty did not under the circum-
stances interrupt the employment in interstate trans-
portation. "If there is an element of interstate com-
merce in a traffic or employment it determines the
remedy of the employee": Phila. & R. Ry. Co. v. Polk,
256 U. S. 332, 334, 41 S. Ct. 518.

In Elder v. Penna. R. R. Co., 118 Pa. Superior Ct.
137, 180 A. 183, we held that where it was the duty of

a railroad policeman or detective to guard both interstate and intrastate shipments of freight, and the employee, after finishing a task, left "to perform an act of personal ministration" he was still engaged in interstate transportation. If Brown had been injured while on the premises and either before he started to guard the crossing or after he finished his day's work, he would have been engaged in interstate transportation within the meaning of the federal Employers' Liability Act: Erie R. R. Co. v. Winfield, 244 U. S. 170, 37 S. Ct. 556.

Also see Knowles v. N. Y., N. H. & H. R. Co., 223 N. Y. 516, where an employee was on his way to work; O'Donnell v. Director General, 273 Pa. 375, 117 A. 82, moving an engine to a point where it was to be used in interstate commerce; North Carolina R. Co. v. Zachary, 232 U. S. 248, 34 S. Ct. 305, where a fireman after servicing his engine preparatory to its use temporarily moved over the tracks toward his boarding house and was killed; Wyatt v. N. Y. O. & W. R. Co., 45 Fed. (2d) 705, where an employee engaged in making up an interstate train went to a nearby "dug-out" to get warm and was gathering coal for the fire when injured.

The court below and the appellee relied on the case of Gasser v. Central R. Co. of N. J., 112 Pa. Superior Ct. 420, 171 A. 97, where we held that a station agent who was regularly engaged at the place of his employment in both interstate and intrastate commerce and transportation was engaged in intrastate transportation when sweeping the station platform on the ground that it was a janitor service. The distinction between that case and this is that in the Gasser case the employee was engaged in service that at times was intrastate and at other times was interstate, and that the service was separable. The decisions clearly establish the rule that the status of the employee with respect to interstate commerce, where the service is separable, is tested

by the work that he is actually performing at the time: Illinois C. R. Co. v. Behrens, 233 U. S. 473, 34 S. Ct. 646. Here, under the Di Donato case, we must assume that the service of Brown was in interstate commerce during the whole course of his employment as a crossing watchman and his duties were not separable. The act of Brown in shaking the grate was a mere incident to the work in which he was engaged and in fact did not interrupt his task of guarding the crossing. He was at the time engaged in interstate transportation and the rights and liabilities arose under the federal statute.

The judgment of the court below is reversed and here entered for the defendant.